next case we'll call 19-8003 Millward versus Teton County Commissioners your honor we are appealing a summary judgment dismissing 1983 claims against individual nurses of a medical corporation correct care solutions and Teton County Detention officers for failing in their gatekeeper roles and also, we're appealing the dismissal of a supervisory liability against the sheriff of Teton County as well as Manel claims against the county and It's our position that the judge's Factual and legal reasoning was flawed in that he invaded the province of the jury by weighing evidence and making credibility determinations His first wrong turn was he ruled that the nurses made a reasonable Considered medical judgment about what the condition was of the deceased To have a reasonable considered medical judgment You need a diagnosis he showed up and they in a condition with astronomically high blood pressures extremely high blood pressures and They Knew that these were life-threatening and And so the nurse who's just a registered nurse She's a gatekeeper. She knew this She knew that extreme Hypertension could cause organ failure. No before you get too much into the facts. I'm wondering if you've properly stated the issue The issue you said was whether she made a reasonable Medical decision. Yes, the way I understand the test. It is whether she was or any of them were deliberately indifferent to the situation That to me that to me is that is a significantly different question Sometimes it'll be the same answer. Sometimes it won't but I think we ought to Make it clear that our test is whether there was deliberate Indifference whether she considered consequences any of them considered consequences, you know, we really don't care And she was when he showed up She was on the phone and the first thing to be as a gatekeeper. She has to understand she is Unqualified to make a diagnosis. She knew he was she should understand her. She knows she's unqualified Sometimes this this language is morphing into a negligence standard and And I just think we ought to be clear in our minds that we are not dealing with the negligence standard here We are dealing with a standard of whether she where she considered a risk and said, you know, I don't really care what happens absolutely, and she was on notice of a condition and symptoms that Could cause substantial harm and she disregarded and recklessly disregarded Find somebody who is qualified to diagnose and treat this individual Instead she wasn't it wasn't the blood pressure coming down. No, no, your honor I thought before he died it came down significantly He Was always in hypertensive crisis my question the last three wasn't it coming down it wasn't her explanation Because it was coming down. It looked like it was getting resolved 50 hours. In fact, it skyrocketed up and stayed over 211 264 it didn't come down until Our experts say all his damage to his organs were done. This was 50 some hours later She prescribed and she's unauthorized to prescribe Medication clonidine, which you're not supposed to give by her own company's policy Elevated blood pressure clonidine should not be used. She was unauthorized to prescribe She prescribed it and she prescribed the wrong medication and so When we say when the judge says well, she treated him. She has no Ability to treat him her job is to recognize the conditions and symptoms of a medical emergency Two medical emergencies, in fact, he was over 0.3 which Policy and procedure is a medical emergency and needs hospitalization So two medical emergencies that she's unqualified to diagnose and treat and she never contacts a physician or It did you bring a state law negligence or professional malpractice claim against the nurses I'm sorry. Did you bring a state law negligence or professional malpractice claim against the nurses? Yes, we did your honor and and But keep in mind that that's a has limitations under the state law of Wyoming, but so the treatment If she is deliberately indifferent because she recklessly disregards and I direct this court to your cases in Mata versus Saiz In C lock versus Colorado where the gatekeepers recognize The conditions and symptoms of medical emergencies and they get a physician There was no reason medical judgment because no physician was ever contacted Then they say these the nurses Who neither they both say I cannot diagnose The other nurse says I don't do medical exams. She didn't even go see him in over 50 hours So he's never seen by a qualified person physician nurse practitioner Who by the way a medical nurse practitioner your honor was on call for CCS their own her own company in Jackson, Wyoming She's a medical nurse practitioner who if on call she didn't call her she disregarded calling her We've taken her deposition. She said boy. I'd never seen blood pressures that high that could cause all sorts of organ failure I would have immediately referred her to the hospital and They would have taken tests and and and dealt with it. So when we talk about deliberate indifference judge evil She disregarded any of the reasonable options available to her and what your case against the nurse the nurses as as being stronger than your case against the guards for deliberate indifference What they blame each other there was a contractor on her that CCS only a contracted to provide the nurse for some 20 hours a week That means for a hundred and forty four hours a week. You had to have the detention officers CCS was supposed to train the detention officers on how to Obtain vitals take blood pressures make clinical judgments They had to make clinical judgments on all of these nausea tremors agitation audit anxiety blood pressure temperature pulse 49 omissions they didn't take so the guard it's a it's a I'm just I'm just trying to drill down I mean your your claims against the two types of defendants are a little different the nurses You're saying they should have known they couldn't handle it and even though they tried to treat him and They because they did prescribe medication to him So even though they tried to treat him and they had reasons for thinking he was okay that they articulated You have the guards on the other hand Where the guards your allegation is that the guards were were not giving them the prescribed medication and in fact avoiding his cell Yes, and and that's that's what I want you to drill down on to see if there's some difference in the two in the claims against the two people two types of defendants Honestly your honor Both are equally culpable CCS didn't give the nurses they discipline their nurses for working overtime The nurses said what we're trying to train the officers the we don't have enough time CCS disciplines up the nurses for working overtime The officers are saying well, we're not getting trained. We have all these jobs so it is an Equally culpable situation because it's a systemic failure. It's not the fault purely of the individual officers And it's not the purely the fault of the nurses although in this case the nurse clearly was deliberately indifferent to known Risks of harm I mean We've never seen but they'd never seen blood pressures as high before And and they're trained. Well you you don't have that from her to you. That's from the nurse practitioner. Oh, no we have that from You from from the nurse that that was on the phone the nurse on the phone Said she can't diagnose. I Don't do diagnosis. She's and she's the only one that saw him over 50 hours They have a medical nurse practitioner that was never called no, I understand that but what you said was that She said she'd never seen a blood pressure that high before That was the nurse practitioner. Okay? So now we have when you say they there was prescribed Medications, but the clonidine was the wrong prescription because under CCS his own policy it masked All these vitals that the Officers were supposed to be seen but but doesn't that just sound in bad judgment as opposed to deliberate indifference I mean she was trying to do something whether it was the right thing whether it was the right decision. I mean She it's not like she was just like our all turkey case where they were just watching a man die before their eyes, right? She knows you can't diagnose She knows that and yet she only saw him twice for moments over 50 hours It's unconscionable There are nurse experts said that this individual Wasn't referred to a hospital or brought a nurse practitioner or physician brought in to see him She completely recklessly Disregarded known risks When When within that 50-hour period did his blood pressure start to decline at what? What hour was the test taken that showed a decline? It would have been an hour All the blood pressures were to be taken in eight minute, excuse me eight hour increments the first blood pressure Was 197 over 141 hypertensive crisis Medical emergency my question what 11 hours later the next one 20 hours later the next one when when when was the first decline noticed the last one was taken one hour after the the 211 over 131 and it went down to 174 over 120, but your honor that's at the first one showing a decline That was the The first one every other one show ascending pressures when was the first one that showed a decline The third was taken 11 20 31 hours into His hospitalization when probably our experts say his heart's been Damaged the first was the first one that Was reduced to 211 over 131 31 hours into the confinement was the first pressure that showed a decline Yes, that's just all I wanted to know. Thank you. I'm that that answers it So There there there was no if the court wants an example of the 10 circuits Application of considered medical judgment I submit self versus crumb shows that the nurses saw Fever chills aches coughs shortness of breath swelling they referred this detainee to a doctor and the doctor Made a diagnosis and It was arguable. It was a misdiagnosis. That was the judgment Made a misdiagnosis here. There was no diagnosis this man died 55 hours That's not exactly right is it they they thought that he they did believe they knew what was wrong with him And they thought that he was acting consistently with alcohol withdrawal isn't that right no There's there's no evidence of that in the record there is it but there's evidence The judge made a credibility decision in invading the jury She's the nurses are saying we thought he was improving at that same time. We have an inmate who is He's he's put into a cell where He has Someone who's been arrested 50 times. He's psychotic yelling screaming They violate their own policy by not segregating him out the officers and the nurses don't want any part of that So they don't even go in there, and he's got the inmate aner says he's suffering He's asking for medication. He's got shortness of breath. He's sweating. He's sick. He won't eat so the judge makes a Credibility decision on what what was his condition these are genuine issues of material factor honor You're out of time counsel. Thank you Made police the court counsel Before I begin I want to notify the court that I will be splitting the time with the other co-defendants equally So I want to use my five minutes to explain precisely why? the serif and the deputies Simply did not we're simply we're not deliberately indifferent to Mr.. Millward's condition here and Specifically I Would like to point about what they knew at the time of the booking They knew from the arresting patrol trooper that he was coherent that he could talk that he was functional they knew that he had a high BAC and They knew that he had a high blood pressure so they contacted the nurse to ask about how to proceed and the nurse advised him to keep him in the jail and provide medication and When they asked him about the high blood pressure Mr.. Millward even reported functioning with that condition This is so in some I think that the high blood pressure alone is simply not enough to so deliberate indifference to a Heart attack of any kind, but you certainly couldn't propose that as a per se rule that high blood pressure is not enough to trigger Responsibility of course it could be enough depending on the facts It might be depending on the facts But I would point the court to case law such as Fort versus Faulkner County And this is a case where the 8th circuit specifically found the high blood pressure readings do not indicate a medical condition So obvious that even a layperson would easily recognize the necessity each case is gonna have to be done on its own facts But that was the 8th circuit. I haven't read the case But I can't imagine saying that high blood pressure could never be enough. I guess we just Proceed that's fair but I would also point out that that case was even stronger facts in the sense that he was complaining about the high blood pressure and Here, we don't have anything in the record showing that he was Complaining to the deputies that he had chest pains Doesn't the record actually show the opposite in this case it shows that they knew that he was pale and even if you take mr. Aner's testimony the cellmate he said that he had trouble eating that he had he was Sinking, but these are all symptoms consistent with alcohol withdrawal not necessarily Anything related to high blood pressure by itself, especially to a layperson Nor that a heart attack was imminent to these untrained deputies these lay deputies and I Would also point out that Even mr. Aner's testimony if you take him completely as true It says that he didn't feel good to the deputies not again that he was clutching his chest Not even that they saw him severing or having trouble eating And In some I think that whatever sometimes existed Could be attributable to the alcohol withdrawal very fairly by a layperson and this case I think is very similar to another 10th Circuit case called Martinez versus bags and The tensor at the court here framed it as a question of whether they were aware of a substantial risk of a hotter tower attack Not necessarily of harm by itself, and I think the same Reasoning is applicable here whether the deputies were Aware of a substantial risk of a heart attack in this case. Did he make any complaints about chest pain or any? Any other type of symptom that would have given the deputies Facts where they could have known he might be having a heart attack. I don't think so your honor and To to be fair, I'm not a medical professional, and I think that it would be but to me It seems that a lot of those symptoms that he did they do that they did know about according to their testimony or perhaps could have known been known about could have been very fairly attributable to the alcohol withdrawal and I think that That's pretty clear was the fact that he was a diabetic Known by to the nurses or was that put in his file somehow? I'm not sir your honor. I'm sorry Okay, I can check it up and provide for the briefing on that point, but I don't know We'll figure it out Okay, what did they do? In other words you're saying well their conduct, but what did they do? So upon booking they merely contacted the nurse who told him to book him into the jail Does that save them from an argument of deliberate indifference just that one fact in this case? I think so only because then what else did they do? they They put my medication regime Emily there were some inconsistencies But he was examined by a nurse twice, and they would check up on him periodically why I mean If they weren't concerned that this man's medical condition There was a severe problem. Why did the bothered even contact the nurse? Because they knew from the symptoms that they had to contact the nurse not necessarily as far as to know that he would die of Heart attack at that point, and I apologize, but my time is up, so thank you wait a minute. Oh come back You you don't you don't necessarily get to dodge out until you've answered the question right my apologies one of the dangers of splitting time so You're saying that at least they knew something was wrong enough to call the nurse yes But you acknowledge that that's not necessarily sufficient to relieve them from any deliberate indifference I think that in this case it is based on the symptoms. That's not all that they knew They would it's not all that they did. I'm asking you. What did they do? You're saying well. They didn't do this. They didn't do that. They weren't risk What did they do because there can also be a negative aspect of this by recognizing? Either an emergency or a condition that you don't pay enough attention to so what did they do? So they would take vital signs That's pretty stylish in the record the record does reflect that sometimes they were missed But he did take take vital signs They would check up on him either by looking through the window of the cell itself as made evident by video record now when they checked his vital signs were they Did they understand that that blood pressure in the area of which they that was showing that he had that that was? dangerous That's a complicated question only because I think it's a good question Did they recognize that whenever blood pressure is running a hundred and seventy or two hundred and something over something That that is a dangerous condition I would refer to court to deputy Moyer's testimony where he talks about speculative risks of high blood pressure not that mr. Milworth an eminent risk of death not that he was going to die in the next two days Not even that he necessarily need to go to the hospital, but they need to contact a nurse earlier on they relied on the reasonable medical judgment of Prison medical staff, and I think that's what the symptoms At least to them required him to do. Thank you. Thanks counsel May please the court Jake Goldstein on behalf of CCS and nurse Davis nurse cordom Like you're on behalf of who? CCS nurse cordom and nurse Davis, okay, and I'd like to go directly to Judge evils questions because I think it is important to point out when the treatment started to Begin to take effect and improve his condition The facts that are relevant to that are that when mr. Millward did arrive to the jail he refused the drugs that were offered to him that were specifically designed to lower his blood pressure It was not until the next morning That nurse cordon told him that if you do not take these pills that I am recommending you take you will die He then acquiesced and took those pills at that time over the course of that next 24 hours That is when the blood pressure began to come down and by the next morning his blood pressure Was down to 211 131 and then even an hour later. It was down again to 174 over 120 was there evidence that high blood pressure is a symptom of Intoxication or not there is and and that was what the nurses What what they had believed what was going on was that this was a gentleman who was going through alcohol withdrawal? and that the I was medical evidence by the nurses that high blood pressure was symptomatic of Coming down from alcohol that is correct. And that is why nurse cordon when she receives the call in that first night It recommends instituting nurse Davis's who has prescriptive authority her standing order of treating the inmate with or the pretrial detainee with Clonidine which is specifically designed to treat out and symptoms of alcohol withdrawal and in particular hypertension So I I did want to begin my argument with discussing The qualified immunity issue, but regardless of how the court decides that issue Summary judgment can still be affirmed for all the reasons I just stated about that were relevant to the deliberate indifference question because there really was no evidence That supports plaintiff's assertion that the that the nurses were deliberately indifferent to his medical condition Either at the time he arrived at the jail or at any time following While he was still there They were you're talking about the question about you said you were going to start out with the question about whether qualified immunity Is that the question of whether it even applies to your clients? That's correct Okay, and and we would submit that it does and the reason why We believe that it does is there doesn't appear to be any dispute between the parties that that it is available To private Parties under the right circumstances those circumstances. We believe are present here. Well count. Let me make sure that Because you've got two issues going along on that one as I recall the district court said that the It was clear. I mean that it was clearly established But he held that your client had not violated any Questions that's because I'm wondering Why the district court even discussed? Clearly established if he's going to say there's a violation. It was not a violation Well, I think I think the judge Was recognizing that this is a first an issue of first impression before this court and that perhaps the judge was But you're saying that as I understand There's an appeal that the trial court erred and saying that it was clearly established And is that your argument that it's being made in regards to that that the trial court erred in finding that it was clearly established Yes, no, I that is not part of my argument. Okay, so my argument is is that the trial court correctly found that that They were in time. They were entitled to qualified immunity And that interruption right and that the The reason for that is the facts in this case we believe under the Richardson factors strongly support the extension of qualified immunity to these nurses and And in particular I'd focus on the market forces factor because that Under Richardson is the most important factor and here those same those Market forces that were present in Richardson or were simply not present here. You know Richardson you have a Privately run privately operated jail staffed with the private actors following their own Policies and under little to no direct supervision from the state And in competition with other firms who would love to have well counsel. I Think we're probably familiar with those cases My question you assuming that they are entitled to qualified immunity the defense of qualified immunity Then how did they not Deliberately and differently affect the death of The plaintiff in this case. I'm saying let's assume absolutely they're entitled to it So now you got to answer the question whether conduct didn't rise to that standard Absolutely, and it did not here and and I would point the court to The facts that at each instance where the nurses were contacted about. Mr. Millward They did address there is known medical conditions They prescribed him on that first night learning that he had came in in high blood pressure with a high blood alcohol level. They prescribed him Medication that was designed to treat those very conditions, but they recognized when they took those first Readings that this man had an extreme high blood pressure, right? The doesn't matter whether it's alcohol related they recognized the man because he was in trouble at the hospital They recognized that he had high blood pressure and they also recognized that this was his baseline that this was a gentleman who reported to them that he had a history of high blood pressure that he had a history of diabetes that he had Those histories and was refusing treatment for those Those conditions and in fact, he continued to refuse it until the following morning. I'd like to leave my colleague sometime That's fine. Let's let's add one. Let's add another minute. You can be excused We'll have your colleague come up and thank you, Your Honor My name is John Bowers I represent Teton County and the officers and I Don't know if I may answer your question about what did the detention officers do? 1130 at night little Christine Sanders got the nurse on the phone and said this man has diabetes. He has a high BAC I'm worried about it. What should I do? And they continued to do that Michael Fieldy. He made a mistake one day He only gave half deliberium. He waited as soon as he found nurse court him. He said hey that made a mistake What do we do? As you pointed out, that's a big difference between negligence and deliberate indifference In fact, I would just refer the court to the Maui case. I think I'm page 54 of the plaintiff's brief where that court said they held that They did these untrained people that weren't even officers that were screening they said even in that situation We're not going to make municipalities and government agencies screen for every possible illness And they talked about Things like hypertension and things like that. This wasn't screening for any possible illness. This was an illness screening in their face This wasn't possible illness. This was an actual illness of And they and they met so they in case you're trying to cite to us about not needing to screen for any possible illness That just doesn't seem to have any relevance to the issue in this case at all Well, I think your honor if I may just I think it does in that he didn't die from alcohol Withdrawal he died from a 99% inclusion of his less left descending coronary artery and Nowhere, he didn't complain about chest pains. In fact, he didn't complain about anything He was very cooperative he was talking he was mobile There was nothing to put our officers on notice and as a gatekeeper the notice they had that first night They got a hold of the medical professional that was trained in correctional care to take care of him They did everything a reasonable gatekeeper would do your honor I am thankful for the extra minute and I appreciate your time. Yeah. Thank you counsel. The case will be submitted and counselor excused